IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SHEMIA PARKER, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | |
| TTEC HOLDINGS, INC., | Jury Trial Demanded |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Shemia Parker ("Plaintiff") brings this class action complaint against TTEC Holdings, Inc. ("TTEC" or "Defendant"), on behalf of herself and all others similarly situated. Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

1. TTEC, formerly known as TeleTech, is a customer services and technology company headquartered in Greenwood Village, Colorado and operates customer call centers throughout the United States and internationally.

2. At all times relevant to this suit, all regular employees of TTEC in the United States and their eligible dependents have been eligible to receive health insurance coverage by participating in a medical plan sponsored and administered by the company, called the TTEC Services Corporation Health and Welfare Benefit Plan ("the Plan").

3. For those employees and their dependents to participate in these plans, they must submit to a laboratory test to determine whether they have used nicotine products, usually in the form of a blood draw. Those who do use tobacco products are required to pay an additional fee of

$46.15 per pay period—or $1,200 per year—to maintain coverage. The company has recently announced that the cost of the surcharge will increase further in 2025, to $57.69 per pay period, or $1,500 per year.

4. Fees of this sort, frequently referred to as "tobacco surcharges", have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act (ERISA), applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations. TTEC did not do so, and therefore collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the Plan itself.

5. More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". And to qualify as a compliant wellness program, a company must offer a "reasonable alternative standard", usually in the form of a tobacco cessation program, completion of which allows participants to avoid the surcharge.

6. By law, a compliant wellness program's reasonable alternative standard must allow participants to receive the program's "full reward"; that is, avoid the surcharge for the entire plan year upon completion of the alternative standard, and must provide notice that such an alternative program exists in every communication regarding the surcharge. This notice must also include a statement that recommendations of an individual's personal physician in formulating a reasonable alternative standard will be accommodated.

7. But a participant in TTEC's medical plan who ceased tobacco use would only be eligible to avoid the surcharge on a going-forward basis, and thus could not earn the "full reward"—*i.e.*, avoiding the surcharge for the entire plan year. Further, TTEC's plan materials used

2

for communicating information about the surcharge with participants make no mention of an opportunity to earn the full reward for the entire plan year by completing a reasonable alternative standard, instead informing participants that successful completion of the cessation program would remove the surcharge only prospectively. And those materials do not include a disclosure that the recommendations of an individual's personal physician would be accommodated. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by TTEC was and remains unlawful.

8.  Plaintiff is a regular, full-time TTEC employee working as a customer service specialist who was required to pay the illegal tobacco surcharge to maintain health insurance coverage. She brings this lawsuit on behalf of herself and all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

## PARTIES, JURISDICTION, AND VENUE

9.  Plaintiff is a citizen of the state of North Carolina. At all times relevant to this suit, she has been employed by TTEC within the state of North Carolina and has paid the Plan's premiums and tobacco surcharge within the state of North Carolina.

10. Defendant TTEC is a Delaware corporation having its principal place of business in Colorado.

11. At all times relevant to this lawsuit, TTEC operated the TTEC Services Corporation Health and Welfare Benefit Plan, which was available for TTEC employees and their dependents. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

12. Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

3

13. This Court possesses subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. This Court also possesses subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) Defendant and at least one class member are citizens of different states, and/or are a citizen or subject of a foreign state, and at least one class member is a citizen of a state.

14. This Court possesses personal jurisdiction over TTEC in this case because its principal place of business is in Colorado and is thus "at home" within the state. Further, ERISA authorizes nationwide service of process. 29 U.S.C. § 1132(e)(2).

15. Venue is proper in this district under 29 U.S.C. § 1132(e)(2) because this is the district where TTEC administers and sponsors the Plan and where its unlawful acts occurred.

## FACTUAL ALLEGATIONS

### a. TTEC's Tobacco Surcharge is a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.

16. As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor", including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

4

17. On its face, TTEC's tobacco surcharge programs violate this provision. Plaintiff and all others similarly situated were, at all times relevant, required to pay an additional "premium or contribution" of $46.15 per pay period, or $1,200 per year, based on a "health status-related factor", that being their use of tobacco products.

18. Specifically, at all times relevant to this lawsuit, pursuant to TTEC's enrollment rules for the respective plans, employees and covered dependents were required to submit to a laboratory test to determine whether they have used nicotine products, usually in the form of a blood draw, and those who were found to have used nicotine products were subsequently required to pay the tobacco surcharge to maintain coverage.

19. Payment of the tobacco surcharge was required for Plaintiff and all others similarly situated to remain insured under the Plan. Plaintiff and all others similarly situated have in fact paid the surcharge.

20. TTEC is and has been required to make contributions to the Plan to ensure that it remains adequately funded. By collecting the tobacco surcharge, the company has reduced the amount of its own contributions, thereby increasing its profits.

21. At all times relevant to this lawsuit, TTEC has maintained sole control of its tobacco surcharge program, including by determining which participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees (if any) are reimbursed for their payment of the tobacco surcharge.

### b. TTEC Cannot Avail Itself to ERISA's Safe Harbor for Wellness Programs.

22. As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention", also known as "wellness programs." 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

23. But to qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

24. TTEC's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, nor does it provide notice of a reasonable alternative standard. As a result, TTEC cannot meet each element of its affirmative defense.

25. Consequently, TTEC is not entitled to safe harbor protection for operating a compliant wellness program and its assessment of the tobacco surcharge fees constitutes unlawful discrimination based on a health status-related factor.

    **c. TTEC's Tobacco Surcharge Program Does Not Provide for a Reasonable Alternative Standard**

26. *First,* by law, a tobacco surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking . . .) in order to obtain a reward."); *see*

6

*also id*. at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use").

27. To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

28. A common means by which plan administrators attempt to provide a reasonable alternative standard to a tobacco surcharge is to permit participants to avoid the surcharge by completing a tobacco cessation program.

29. But for a putative alternative standard (such as attending a tobacco cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard must be eligible to avoid the surcharge in its entirety for a given plan year.

30. The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January, February, and March to that individual*.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied

7

(e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

31. But an employee of TTEC who completed the alternative standard during a given plan year would not be eligible to avoid the entire $1,200 tobacco surcharge. Instead, he or she could avoid the surcharge on a going-forward basis only and would not be eligible to receive a reimbursement for surcharge payments already made in that plan year.

32. For instance, a recent email communication from TTEC management to employees announcing an upcoming increase to the cost of the surcharge included the statement that "[s]urcharges that have already been assessed will not be refunded."

> This e-mail is to notify you of the nicotine surcharge that will increase from $46.15 per person per pay period to **$57.69** per person per pay period starting with the January 17th, 2025 pay date. This is the first surcharge increase since the program was implemented in 2019.
>
> You do have the opportunity to have the surcharge removed if you enroll in a nicotine cessation program and/or quit, and test negative. For more information, please visit the Nicotine Testing page at Your TTEC Benefits. Surcharges that have already been assessed will not be refunded, however, the surcharge would be removed on future paychecks once the negative result is received and processed.

33. That is consistent with the policy outlined in an earlier company "Benefits FAQ" document, which stated in pertinent part that "[n]o refunds will be issued for tobacco surcharges."

34. Because participants and beneficiaries enrolled in the Plan could not receive a retroactive reimbursement to avoid the tobacco surcharge in its entirety, TTEC does not permit participants to receive the "full reward" and therefore does not provide for a "reasonable alternative standard."

### d. TTEC Failed to Provide Notice of Availability of a Reasonable Alternative Standard

35. *Second*, to be deemed a lawful wellness program, "[t]he plan or issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program . . .* the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01 at 33166.

36. But TTEC's plan materials discussing its tobacco surcharge fees do not disclose the existence of a reasonable alternative standard.

37. As alleged further herein, the Plan's written materials fail to disclose that a participant who completed the cessation program would be eligible for retroactive reimbursement for surcharge payments made during that plan year, and thus eligible to receive the "full reward." Indeed, to the contrary, the relevant written materials notify participants and beneficiaries that upon successful completion of the tobacco cessation program, they can have the surcharge removed only "on future paychecks."

38. Further, in fact, many of TTEC's written materials discussing the tobacco surcharge suggest that there is no alternative standard available at all, and instead that a participant may avoid the surcharge only by actually having quit using tobacco products. For instance, one document disseminated to employees provides that:

9

> To avoid the surcharge, you must complete a nicotine test and have a negative result on file with us. Visit the Nicotine Testing page at Hello TTEC Benefits (hellottecbenefits.com) for information, testing deadlines, processing cycles, and instructions on how to test.

39. Another document disseminated to employees, titled "US Benefits FAQs" similarly informs participants the following, suggesting that completion of a cessation program is not sufficient to avoid the surcharge:

> **Q: Who is subject to the nicotine surcharge?**
> A: All employees and dependents 18+ on a TTEC medical plan who do not complete a nicotine test, with a negative result, are subject to the nicotine surcharge.
>
> **Q: How do I ensure that I'm not assessed the nicotine surcharge?**
> A: Visit the Nicotine Testing page at Your TTEC Benefits and read the information, including all blue tabs, in full. Then select the Completing Nicotine Testing button and follow the steps to obtain a voucher for testing. Be sure to also review the Nicotine Testing Processing Cycles button to identify your deadline for testing.

40. And the Plan's 2024 Plan Document and Summary Plan Description likewise describes TTEC's tobacco surcharge program as follows:

> If you have elected medical coverage with TTEC, you and any dependents 18+ enrolled on the plan you must complete a nicotine test and have a negative test result on file. If no test result (only negative test results are reported) is reported to us, you, and any dependent 18+ will be subject to the nicotine surcharge of $46.15 per pay period, per person up to a maximum of three members.
>
> A nicotine test can be completed at any time and once we receive a test result (only negative test results are reported) the surcharge will be removed. Testing deadlines and detailed information are available and testing deadlines must be met to avoid any surcharge; we do not provide refunds unless there is an administrative error. We do offer a nicotine cessation program and affidavit for those on a prescribed nicotine replacement therapy to avoid the surcharge.

41. *Third*, under the applicable regulations, "[t]he plan or issuer must disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information

10

for obtaining a reasonable alternative standard and a *statement that recommendations of an individual's personal physician will be accommodated*. 29 C.F.R. § 2590.702(f)(4)(v).

42. Upon information and belief, none of TTEC's written plan materials include a statement that the recommendations of an individual's physician will be accommodated.

43. TTEC, then, has not complied with the requirement that it provide notice of the availability of a reasonable alternative standard by which a plan participant could avoid the tobacco surcharge and receive the full reward, or that the recommendations of his or her personal physician would be accommodated. The company cannot then avail itself of the regulatory safe harbor for operating a lawful wellness program.

## CLASS ACTION ALLEGATIONS

44. <u>Class Definition</u>: Plaintiff brings this action individually and on behalf of all other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of a class consisting of:

> All individuals within the United States who paid TTEC's tobacco surcharge at any time within the relevant limitations period.

45. Excluded from the Class are the Court and its officers, employees, and relatives; TTEC and its subsidiaries, officers, and directors; and governmental entities.

46. <u>Numerosity</u>: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as TTEC employs tens of thousands of similarly situated individuals across the United States.

47. All members of the Class are ascertainable by reference to objective criteria, as TTEC has access to addresses and other contact information for Class members that can be used for notice purposes.

48. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Indeed, the claims of *every* class member will rise or fall on the question of whether the tobacco surcharge is compliant with all legal requirements, and therefore lawful. Common questions include:

    a. Whether TTEC's tobacco surcharge discriminates against their group health plans' participants and beneficiaries based on a health status-related factor;

    b. Whether TTEC's tobacco surcharge programs qualifies for statutory safe harbor protection as a compliant wellness program;

    c. Whether TTEC can meet every element of its statutory affirmative defense for operating a compliant wellness program;

    d. Whether TTEC would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;

    e. Whether all of TTEC's group health plans' materials describing the tobacco surcharge give notice of a reasonable alternative standard by which a plan participant or beneficiary may receive the full reward;

    f. Whether a plan document that describes the tobacco surcharge but does not disclose an alternative program by which a participant can earn the full reward for the plan year gives notice of a reasonable alternative standard;

    g. Whether a plan document that describes the tobacco surcharge but does not disclose a statement that recommendations of an individual's personal physician will be accommodated gives notice of a reasonable alternative standard;

    h. Whether TTEC's tobacco surcharge fees violate the law; and

    i. Whether TTEC breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge funds.

49. <u>Typicality</u>: Plaintiff's claims are typical of other members of the Class because all the claims arise from the same course of conduct by TTEC—its collection of an unlawful surcharge—and are based on the same legal theories.

50. <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class members whom she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

51. <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

52. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## **COUNT I – ERISA STATUTORY VIOLATION**
**Unlawful Surcharge – Failure to Provide a Reasonable Alternative Standard**
*By Plaintiff and the Class Against TTEC*

53. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

54. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $46.15 per pay period, or $1,200 per year.

13

55. TTEC's tobacco surcharge is not and was not a permissible wellness program, because it does not provide for a reasonable alternative standard, in that a tobacco user who completed the designated tobacco cessation program would not be reimbursed for surcharge payments already made during that plan year, and thus would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a $1,200 reduction in premium costs to maintain medical coverage.

56. TTEC cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

57. TTEC's tobacco surcharge have discriminated against, and continue to discriminate against, participant and beneficiaries enrolled in its group health plan based on a health status-related factor in assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

58. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

59. Plaintiff and class members were required to pay an illegal fee, and TTEC collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT II – ERISA STATUTORY VIOLATION**
**Unlawful Surcharge – Failure to Provide Required Notice**
*By Plaintiff and the Class Against TTEC*

60. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

61. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $46.15 per pay period, or $1,200 per year.

62. TTEC's tobacco surcharge is not and was not a permissible wellness program, because TTEC did not give statutorily required notice of reasonable alternative standard, in that:

14

    a. The Plan's written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year, but instead informed them that they would have the surcharge removed on a going-forward basis only; and

    b. The Plan's written materials discussed the tobacco surcharge but did not include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard.

63. TTEC cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

64. TTEC's tobacco surcharge has discriminated against, and continue to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

65. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

66. Plaintiff and class members were required to pay an illegal fee, and TTEC collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT III – ERISA BREACH OF FIDUCIARY DUTY**
**29 U.S.C. § 1109**
*By Plaintiff and the Class, On Behalf of the Plan Against TTEC*

67. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

68. At all times relevant to this lawsuit, TTEC was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the Plan and disposition of its assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Plan.

69. TTEC breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law and in violation of the relevant plan terms, as the receipt of additional funds reduced its own costs associated with funding the Plan and forestalled its own obligations to make contributions thereto.

70. Upon information and belief, TTEC's responsibilities with respect to the funding of the Plan's claims and administrative expenses relating to their plans' self-funded arrangements equaled the amount by which their plans' claims and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, TTEC's collection of the tobacco surcharge funds diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

71. As a result of the imposition of the tobacco surcharge, TTEC enriched itself at the expense of the Plan, thereby resulting in it receiving a windfall.

72. TTEC breached its fiduciary duties under ERISA in that it:

   a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

    b. failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

    c. caused the Plan to engage in transactions that TTEC knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

    d. dealt with assets of the Plan in TTEC's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

    e. acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

    f. caused the Plan to require participants to pay premiums or contributions which were greater than such premiums or contributions for a similarly situated participant enrolled in the Plan on the basis of a health status-related factor in relation to the participant or beneficiary in violation of ERISA. *See* 29 U.S.C. § 1182(b).

73. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, TTEC is liable to make good to the Plan all losses to the Plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

74. Plaintiff is authorized to bring this action on behalf of the Plan pursuant to 29 U.S.C.

§ 1132(a)(2).

## REQUEST FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against TTEC as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

B. That the Court order TTEC to reimburse all persons who paid the tobacco surcharge within the relevant limitations period;

C. That the Court order disgorgement and/or restitution of all payments unlawfully assessed by TTEC, or, alternatively, the profits earned by TTEC in connection with its receipt of such unlawful fees;

D. That the Court grant a declaratory judgment holding that the acts of TTEC described herein violate ERISA and applicable law, as well as the terms of the plan;

E. That the Court enter a permanent injunction against TTEC prohibiting it from collecting tobacco surcharge funds unless and until it revises its surcharges to comply with all ERISA statutory requirements;

F. That the Court order TTEC to provide all accountings necessary to determine the amounts it must make good to the Plan and to plan participants and beneficiaries;

G. That the Court surcharge against TTEC all funds it collected in violation of ERISA and the terms of the plan;

H. That the Court find and adjudge that TTEC is liable to make good to the Plan all losses to the Plan resulting from each breach of its fiduciary duties, to otherwise restore the

    Plan to the positions it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciaries;

I. That the Court impose a constructive trust on profits received by TTEC as a result of fiduciary breaches committed by it or for which they are liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J. That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K. That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L. That the Court order the payment of interest to the extent it is allowed by law; and

M. That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: November 13, 2024

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

<u>/s/ Alexander T. Ricke</u>
George A. Hanson
Alexander T. Ricke
Caleb J. Wagner
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:   (816) 714-7100
Facsimile:   (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:   (816) 781-0002
Facsimile:   (816) 781-1984
ryan@mcclellandlawfirm.com

*Attorneys for Plaintiff
and the Proposed Class*